(Portage County Common Pleas.)
February, 1901.

## THE STATE OF OHIO ex rel. W. H. STURDEVANT v. THE BOARD OF EDUCATION OF FREEDOM TOWNSHIP.

(1.) The act known as the Boxwell Law is constitutional.

(2.) This act providing for the payment of tuition of the students of the high school in another district than their own, by the district in which they live is not unconstitutional, on the ground that it provides for a distribution of the money of one school district, or taxing district, in favor of another, without authority on the part of the district expending the money, to control its expenditures.

(3.) It is not a distribution of the funds of one district in favor of another, but it is a distribution of the funds of the district raising them, for its own benefit, and because it happens to be paid in some other place, there is no misapplication of it.

(4.) The legislature from the beginning, has asserted its authority to control the application of school funds, and has repeatedly done so, and it is clearly within its constitutional powers.

(5.) The right to a writ of mandamus will not lie in a case like this until the amount to be paid for such tuition has been liquidated, either by an agreement between the different boards of education, or by suit at law; but when liquidated, if payment is refused, the writ should at once be granted.

(See to the same effect, ante State ex rel. v. B'd. Ed'n., p. 186.)

ROBINSON, J.

I have examined this case of Sturdevant against the Board of Education of Freedom Township, and have devoted what would seem an unnecessary amount of time to this question, and have arrived at a conclusion that, to me, is entirely satisfactory.

Objection is made in this case, that this act providing for the payment of tuition of the students of the high school in another district than their own, by the district in which they live, is unconstitutional, on the ground that it provides for a distribution of the money of one school district, or taxing district, in favor of another, without any authority on part of the district expending the money, to control its expenditures. I find in examining the school statutes, and decisions under them, that the legislature of the state, from the beginning, has asserted its authority to control the application of school funds, and has repeatedly done so, in similar cases. In one instance, they have provided that where scholars live more than a mile and a half from their own school house, that they may attend the district school in some other district, and their own district shall be compelled to pay their tuition. Perhaps there is another act similar to this, but in both of these cases, the legislature at the same time provided the means by which the amount of tuition to be paid was to be estimated, and made it absolutey certain, as to its application. Clearly those acts are all constitutional, and

so is this one, for the reason that it is not a distribution of the funds of one district in favor of another, but it is distribution of the funds of the district raising them, for its own benefit, and because it happens to be paid in some other place, for its own benefit, there is no misapplication of it, and it is clearly within the power of the legislature as much to require the tuition of the high school scholars to be paid, as it is to require the tuition of some of the minor scholars, who happen to attend some school which is nearer to their home, when they live a mile and a half away from their own. But in running down this question, I ran across another, which seems to be applicable to this proceeding.. This statute provides no means by which it is to be estimated what that tuition shall be that is to be paid. The legislature have provided by an act, that boards of education in this situation, may agree as to the tuition, but this act nowhere provides that there shall be any antecedent agreement, and none is required, because if the scholar receives the certificate, and if the adjoining high school district will take the scholar, the right to require the payment of tuition at once arises, if the scholar attends that school, not by virtue of any express agreement under the statute, because none was made between the two school districts. but it is by virtue of the agreement made between the scholar on the one hand, and the school receiving on the other, which binds the school district in which the scholar lives, because the statute says it shall use its money for that purpose. There is, however. not anywhere to be found in the statute any means of ascertaining what that compensation of the school district shall be. So that, it will at once be seen, that if it was left to the arbitrary control of the school district receiving the scholar, and the parent of the scholar, to agree what it should be, it might vary wonderfully, and might in one case be a very small amount, and in another, a very large one, and even with two scholars in the same family, different prices might be charged. Now, it can't reasonably be said, that because the statute does not provide any means of ascertaining amount of payment, that therefore the statute becomes void, but clearly the amount to be paid must be in some way ascertained before the payment could be asserted against the school district.

The parent, if he pay the tuition, undoubtedly could maintain an action at law against the school district, in which his child lived, or if the parent made the contract with the school district, in Garrettsville, undoubtedly the Garrettsville board of education could maintain an action against the Freedom Board of Education, to recover the pay. But the underlying question, is how it can be determined. As I have suggested it seems to be impossible that it could be by the simple agreement between the Garrettsville Board of Education and the parent, because certainly that would be making conclusive upon the Board of Education of Freedom, something to which they never had assented, and the statute does not intend that they ever should assent. So coming to that question, I discovered that where in this state money is entitled to be paid to a party from

anv of thes. public officers, if the officers or board required to pay the money is not required to adjudicate and audit the amount due to the party, that mandamus never lies until the parties' account has been adjudicated and audited by either the proper person or the proper tribunal having control of such things. The supreme court have twice distinctly decided that question, and in connection with it, have decided that a proceeding in mandamus, like this one is not a proper tribunal to grant the mandamus and at the same time decide the question of the amount due.

In other words, in this case, it would follow that this amount never having been determined, and this court having no jurisdiction to determine it, there can be no proceedings in mandamus to order its payment, until it has been determined either by the agreement of the two boards of education, or by a judgment in question at law between them, or between the party, and one board of education.

Now I will give to the counsel, the authorities, and their application to the case before us. The first one is the Commissioners of Putman county against the Auditor of Adams county, in the first O. S., and page 326 will be sufficient for you to find what I am about to read. This is where no provision was made for the Commissioners of Putman county alone to fix the amount that was due in this case, but it was required that the two counties should do it.

"If the amount were fixed in the mode contemplated in the statute, or if it were liquidated by judgment, mandamus would be the proper remedy to compel the auditor to perform the ministerial act of drawing the order; but until the amount is thus liquidated, the auditor can not be compelled to act, the time of his action has not arrived. It is true, (that is the case here, in the case we are trying) that no objection was taken in this proceeding to the amount; it is admitted that the indebtedness of Putman county is truly stated, and that the sum that Allen county was to pay, was assessed in the manner, and at the time claimed by the plaintiff; but it is not clearly admitted to be the true liability of Allen coun—· but even if it were, the auditor having no right to fix the amount, could not, as we think, bind the county by any admission, and the action of the auditor in this matter, being merely ministerial, we think that mandamus will not lie against him for refusing to act, until the amount is legally assessed." Then they cite the case of Burnet v. The Auditor of Portage county, 12 O. R., 57 I did not examine that case, because I did not know whether it would apply.

Now since the decision of this case, in the first O. S., the legislature have amended this act in relation to mandamus, and it contains some peculiar expressions that might be a little misleading.

It says: "If judgment be given for the plaintiff" (this is section 6753) "the relator may recover the damages which he has sustained, to be ascertained by the court, or a jury, or by a referree or a master, as in a civil action, and a peremptory mandamus shall also be granted to him without delay." It might be inferred from that amended act, that it was

meant that in this kind of a proceeding, that this court, if it thought the right existed, could determine the amount due, and at the same time grant the writ of mandamus. I had some little difficulty in determining what that meant, but there is no serious difficulty about it. This court has no jurisdiction of a suit at law between these parties, for the amount in question. And secondly, the right of a writ of mandamus never applies in a case of this kind, as I have said, until the amount is determined, and the case of the State in relation of Gerke against the Board of Commissioners of Hamilton county, in 20 O. S., would seem to indicate that the view of the court is correct, that this section of the statute has no application. In that case the agreement on the writ was that the claim was for the reasonable necessary expenses incurred in the discharge of his duty. And the supreme court says, that is not properly triable on mandamus. The claims should be first liquidated before the proper tribunal acording to the ordinary course provided by law, in such cases, and if, after such liquidation, payment should be refused, mandamus may then be resorted to enforce it. This section in relation to recovering damages in mandamus cases, as I said, I puzzled over quite a bit, but I finally found what kind of cases it referred to, and it referred to where the right to peremptory mandamus existed for some purpose and a party has been wrongfully delayed or injured in a money sense, by the delay, he is entitled to have a peremptory writ of mandamus awarded, and in the same action is entitled to recover damages for the delay, and that is what it means under this section, but it was never intended to settle disputed questions of fact as to the amount of money due the parties, and then at the same time grant the writ. It follows in this case that this writ should be dismissed solely on the ground that the amount in question has never been liquidated between the parties, but when liquidated, if payment is refused, the writ should be granted at once without any further delay.

I think the law is entirely constitutional, I think it is a good law, and I think it ought to be enforced.

Rollin S. Webb, for Relator; J. H. Nichols and W. J. Beckley, for Defendant.